```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
                                     :
JACK HSU,                            :   05 Civ. 4586 (LTS) (JCF)
                                     :
            Petitioner,              :        REPORT AND
                                     :        RECOMMENDATION
     - against -                     :
                                     :
SUPERINTENDENT CUNNINGHAM,           :
WOODBOURNE CORRECTIONAL FACILITY     :
                                     :
            Respondent.              :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LAURA T. SWAIN, U.S.D.J.:
```

Jack Hsu brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the length of the sentence imposed upon him by the Dutchess County Court for criminal possession of a weapon in the second degree and stalking in the second degree. Mr. Hsu argues that his sentence should be vacated because (1) it is excessive, and (2) it violates the Eighth Amendment's prohibition against cruel and unusual punishment.

For the following reasons, I recommend that the petition be denied.

Background

On June 26, 2001, a grand jury in Dutchess County, New York charged Jack Hsu with seven crimes: two counts of Stalking in the Second Degree (N.Y. Penal Law § 120.55(1)(i)); two counts of Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03(2)); two counts of Criminal Possession of a Weapon in the Third Degree (N.Y. Penal Law § 265.02(4)); and, finally, one

count of Criminal Possession of a Weapon in the Fourth Degree (N.Y. Penal Law § 265.01(2)). (Affidavit of Bridget Rahilly Steller dated Oct. 14, 2005 ("Steller Aff."), Exh. 2).

A. <u>The Plea</u>

On September 26, 2001, pursuant to a plea agreement, Mr. Hsu pled guilty before the Honorable Gerald V. Hayes in the Dutchess County Court to one count of criminal possession of a weapon in the second degree and one count of stalking in the second degree. (Plea Transcript ("Pl. Tr."), attached as Exh. 4 to Steller Aff., at 2-3). The following factual summary is derived from the testimony given by Mr. Hsu at the plea allocution.

Mr. Hsu began dating Jane Porter in April 2001. By the middle of May she ended the relationship. (Pl. Tr. at 17) Soon after, the petitioner began making unwanted phone calls to Ms. Porter's mother in an attempt to contact her. (Pl. Tr. at 17). In addition, Mr. Hsu called and sent threatening e-mails to Ms. Porter's house in New York, despite being told by her not to do so. (Pl. Tr. at 17-18). One such e-mail, sent June 20, 2001, stated that Ms. Porter would die in hell. The e-mail further advised that this was a warning. (Pl. Tr. at 18).

That same night, Mr. Hsu drove to a dance in Newton, Connecticut looking for Ms. Porter. (Pl. Tr. at 19). Upon finding her in the parking lot with a friend, Douglass Giardini, Mr. Hsu displayed a loaded pistol. (Pl. Tr. at 15, 19). He held the two

captive until early the next day, when Ms. Porter convinced him to let Mr. Giardini leave and to follow her to her home in Dutchess County, New York. (Sentencing Transcript ("S. Tr."), attached as Exh. 5 to Steller Aff., at 11-12). Ms. Porter drove her car as Mr. Hsu followed in his. (Pl. Tr. at 16).

After Mr. Hsu drove into New York, he was arrested by the state police. The petitioner admitted following Ms. Porter from Connecticut to New York after threatening her with his pistol. (Pl. Tr. at 16-19). He also acknowledged that he intended to use the pistol to harass Ms. Porter for breaking off her relationship with him. (Pl. Tr. at 19, 20).

Mr. Hsu further stated that he understood that the prosecutor would recommend a sentence of 12 years imprisonment, that he would be subject to five years post-release supervision, and that Judge Hayes could sentence him to up to 15 years in prison if he believed a longer sentence was necessary. (Pl. Tr. at 10-13).

B. Sentencing

After reviewing the presentence report, letters submitted on behalf of Mr. Hsu, a psychologist's report, and presentence memoranda, Judge Hayes determined that the violent nature of Mr. Hsu's actions, along with his failure to appreciate the seriousness of the crime, warranted a stern sentence. (S. Tr. at 10-12). Judge Hayes stated:

> Ms. Porter told you that she did not want to see you. You persisted, you sent e-mails, you made phone calls.

> She viewed the e-mails as threatening enough to go to the sheriff's department here in Dutchess County. And, finally, on the night of June 20th you waited for her and you confronted her and you held her at gunpoint for several hours. You threatened to kill her and, finally, she remarkably was able to convince you to follow her to New York leaving Mr. Giardini in Connecticut.
>
> . . .
>
> You have said that you are sorry. My sense from the presentence report was that you really seem to have very little insight in appreciating the seriousness of your actions and the effect on her, the fear and the terror that you instilled in her to the extent that, according to her letter, she still fears for her own safety and safety of family members. (S. Tr. at 11).

On December 12, 2001, Judge Hayes sentenced Mr. Hsu to a determinate term of ten years on the weapons count and a concurrent indeterminate term of one and one-third to four years on the stalking count. (S. Tr. at 12).

### C. Procedural History

On August 13, 2003, Mr. Hsu filed a motion in the Appellate Division, Second Department to reduce his sentence on the ground that it was excessive. (Petitioner's Exhibit - Appendix Brief Made in Support of His Application for Writ of Habeas Corpus ("Pet. App."), Exh. 1 at 1-3, 10-12). The petitioner argued that ten years imprisonment for a first time offender was, under the totality of the circumstances, an excessive sentence. (Pet. App., Exh. 1 at 10-12). He did not assert any federal constitutional violation or cite any decisional law referring to a right protected by the Constitution. (Pet. App., Exh. 1 at 10-12).

The Appellate Division affirmed Mr. Hsu's sentence on February

9, 2004. People v. Hsu, 4 A.D.3d 901, 774 N.Y.S.2d 855 (2d Dep't 2004). The petitioner did not seek leave to appeal to the New York Court of Appeals.

On March 11, 2004, Mr. Hsu returned to the County Court and filed a motion to set aside his sentence pursuant to New York Criminal Procedure Law ("CPL") § 440.20 on the ground that it constituted cruel and unusual punishment. In support of this argument he cited People v. Broadie, 37 N.Y.2d 100, 371 N.Y.S.2d 471 (1975). (Pet. App., Exh. 5 at 2). On June 8, 2004, Judge Hayes denied the motion on the merits. (Steller Aff., Exh. 17). Mr. Hsu then sought permission from the Appellate Division pursuant to CPL § 460.15 to appeal the order of the County Court. (Steller Aff., Exh. 18). The Appellate Division denied the application. (Steller Aff., Exh. 20).

Next, Mr. Hsu applied to this Court seeking habeas corpus relief, arguing that his ten year determinate sentence is excessive and violates the Eight Amendment prohibition against cruel and unusual punishment.

The Honorable Michael B. Mukasey, Chief Judge, issued an order directing Mr. Hsu to abandon his excessive sentence claim and amend his petition to conform to the Rules Governing Section 2254 Cases in the United States District Courts. (Order dated May 11, 2005). On July 5, 2005, Mr. Hsu submitted an Amended Petition that omitted the excessive sentence claim. Nevertheless, the respondent has

addressed this claim (Respondent's Memorandum of Law dated Oct. 28, 2005 at 4-6), and Mr. Hsu replied to the respondent's argument (Petitioner's Affirmation in Response to the Respondent's Affidavit in Answer to a Petition for Writ of Habeas Corpus and Memorandum of Law dated Nov. 20, 2005 ("Pet. Reply") at 2), and I will therefore assume that the petitioner is still pursuing it.

Discussion[1]

---

[1] Prior to passage of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), factual findings made by a state court after an evidentiary hearing were presumed correct in a federal habeas proceeding, but federal courts were not required to defer to state court determinations of law and of mixed questions of law and fact. See Thompson v. Keohane, 516 U.S. 99, 107-12 (1995); Brown v. Artuz, 283 F.3d 492, 497 (2d Cir. 2002). Under the AEDPA, however, a writ of habeas corpus may not issue "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

> A decision is contrary to clearly established Federal law if it "contradicts the governing law" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from" the Supreme Court. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). An unreasonable application of federal law is more than an incorrect application, but the petitioner need not show that all reasonable jurists would agree that a state court determination is incorrect in order for it to be unreasonable. Id. at 409-12. Instead, a federal court should review a state court's interpretation of federal law using a standard of objective reasonableness. Id. at 409. The "increment of incorrectness beyond error . . . need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

A.  <u>Excessive Sentence Claim</u>

Mr. Hsu argues that ten years imprisonment far exceeds the sentence warranted by his conduct, his background, and society's interest in imprisoning him. (Pet. App., Exh. 1 at 10). Mr. Hsu bases this claim on state law equitable principles, not on any federal constitutional violation or on any decisional law referring to a right protected by the Constitution. The respondent argues that Mr. Hsu's claim should be dismissed for failing to exhaust all available state court remedies.

The doctrine of exhaustion generally requires a petitioner in a habeas corpus proceeding to exhaust all available state court remedies for each claim prior to federal review. 28 U.S.C. § 2254(b), (c); <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999); <u>Duckworth v. Serrano</u>, 454 U.S. 1, 3 (1981); <u>Lurie v. Wittner</u>, 228 F.3d 113, 123-124 (2d Cir. 2000). In New York, a criminal defendant must "appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by

---

<u>Yung v. Walker</u>, 341 F.3d 104, 109-10 (2d Cir. 2003).

The AEDPA standard applies to this case since Mr. Hsu filed his petition after the Act's effective date. <u>See</u> <u>Brown</u>, 283 F.3d at 498 n.2. Nevertheless, since each of the petitioner's claims fails under the less deferential pre-AEDPA standard, there is no need to apply the AEDPA's heightened deference to state court determinations. <u>Cf.</u> <u>Kruelski v. Connecticut Superior Court for the Judicial District of Danbury</u>, 316 F.3d 103, 106 (2d Cir. 2003) (suggesting, in post-AEDPA cases, that habeas courts assess first whether state court's ruling was erroneous under "correct interpretation" of the federal law at issue, then whether the ruling was unreasonable).

7

applying to the Court of Appeals for a certificate granting leave to appeal." Galdamez v. Keane, 394 F.3d 68, 74 (2d Cir. 2005); Morgan v. Bennett, 204 F.3d 360, 369 (2d Cir. 2000); CPL § 460.20. Because Mr. Hsu failed to seek leave to appeal the denial of his direct appeal, the excessive sentence issue raised on that appeal is unexhausted.[2]

Nevertheless, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2); see Greiner v. Wells, 417 F.3d 305, 317 n.14 (2d Cir. 2005). Here, it is appropriate to deny Mr. Hsu's excessive sentence claim on the merits because it is not cognizable in a habeas corpus proceeding. In general, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). A violation of state law is not a cognizable habeas claim unless it implicates a constitutional concern. Id. at 67; Lewis v. Jeffers, 497 U.S. 764, 780 (1990)("[F]ederal habeas corpus relief does not lie for errors of state law."); Noble v. Kelly, 246 F.3d 93, 98 (2d Cir. 2001). Mr.

---

[2] Mr. Hsu claims that he did seek leave to appeal and that his application was denied on August 18, 2004. (Pet. Reply at 2). However, that application clearly did not relate to his direct appeal; rather it sought leave to appeal from the County Court's denial of his motion to set aside the sentence pursuant to CPL § 440.20. (Steller Aff., Exh. 18).

8

Hsu's excessive sentence claim is based exclusively on his assertion that Judge Hayes abused his discretion in weighing the factors that he considered in imposing sentence. Such an abuse of discretion may contravene state law, but it is not a federal constitutional violation and therefore cannot support an application for habeas corpus relief.

B. Eighth Amendment Claim

Mr. Hsu next argues that his ten year sentence should be set aside because it violates the Eighth Amendment prohibition against cruel and unusual punishment. (Pet. App., Exh. 5 at 11). Mr. Hsu relies on the New York Court of Appeals opinion in People v Broadie, 37 N.Y.2d 100, 371 N.Y.S.2d 471 (1975). In that case, the court noted that in rare circumstances a sentence that does not exceed the statutory maximum may nevertheless violate the Eighth Amendment because it is grossly disproportionate to the crime committed. Id. at 119, 371 N.Y.S.2d at 482. The court rejected a subjective "shocks the conscious" standard and instead looked to several objective factors, including the gravity of the offense, the character of the offender, and the danger the offender poses to society. Id. at 112-13, 371 N.Y.S.2d at 476-77.

The United States Supreme Court likewise recognizes that a sentence that is grossly disproportionate to the crime committed violates the Eighth Amendment. Harmelin v. Michigan, 501 U.S. 957 (1991); Solem v. Helm, 463 U.S. 277 (1983); Huto v. Davis, 454 U.S.

370 (1982); Rummel v. Estelle, 445 U.S. 263 (1980). However, federal courts are "reluctan[t] to review legislatively mandated terms of imprisonment." Rummel, 445 U.S. at 274. Furthermore, when reviewing discretionary sentences, "it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence; rather, in applying the Eighth Amendment the appellate court decides only whether the sentence is within constitutional limits." Solem, 463 U.S. at 290 n. 16.

The Solem decision set forth several objective factors to consider when determining whether a sentence is so grossly disproportionate that it violates the Constitution. First, a court examines the harm caused or threatened to the victim or society and the culpability of the offender. Id. at 290-91. Then, the court may refer to crimes within the same jurisdiction for which a similar sentence may be imposed and sentences for the same crime in other jurisdictions. Id. at 291-92; See Harmelin, 501 U.S. at 1004-05 (Kennedy, J., concurring). However, a full review is only necessary in exceptional cases where a "threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality." Harmelin, 501 U.S. at 1005 (Kennedy, J., concurring); see United States v. Hildenbrandt, 378 F. Supp. 2d 44, 47 (N.D.N.Y. 2005) (thirty year term for throwing a "Molotov cocktail" into the window of an apartment occupied by a ex-

10

girlfriend, her boyfriend and infant grandchild did not require in-depth review); United States v. Rosenberg, 806 F.2d 1169, 1176 (3d Cir. 1986) (fifty-eight year term for nine counts of possession of weapons, explosives, and false documents did not warrant comprehensive review).

The crime to which Mr. Hsu pled guilty, criminal possession of a weapon in the second degree, requires that the offender possess a loaded firearm with the intent to use it unlawfully against another person. N.Y. Penal Law § 265.03(1). Mr. Hsu admitted displaying a loaded pistol to Ms. Porter, a woman he had been stalking. (Pl. Tr. at 15, 19). He held her overnight at gunpoint and then followed her, intending to harass her. (Pl. Tr. at 16, 20, 21). The violence of Mr. Hsu's actions and his clear intention to terrorize another person negate any claims of gross disproportionality.

Furthermore, Mr. Hsu has not presented any argument to suggest that ten years imprisonment is grossly disproportionate when viewed in relation to punishments for crimes of similar magnitude in New York or the same offense in other parts of the United States. In New York, similar violent felonies –- ranging from assault on a peace officer (N.Y. Penal Law § 120.08), to forcible robbery (N.Y. Penal Law § 160.10), to criminal sale of a firearm with the aid of a minor (N.Y. Penal Law § 265.14) –- all carry a prison sentence of three and one-half to fifteen years. Likewise, other states impose

comparable sentences on offenders who commit similar crimes. For example, in New Jersey, an offender is subject to a determinate term of five to ten years for possessing a firearm and intending to use it unlawfully against another. N.J.S.A. §§ 2C: 39-4(a), 43-6(a)(2). In Delaware, a defendant can be sentenced to a determinate term of between three and twenty-five years for the possession of a firearm while committing a felony. 11 Del.C. §§ 1447A(a),(b), 4205. In short, ten years imprisonment for criminal possession of a weapon is not so incongruous as to constitute a violation of the Eighth Amendment.

Conclusion

For the reasons set forth above, I recommend that Mr. Hsu's application for a writ of habeas corpus be denied and the petition be dismissed. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Laura T. Swain, Room 1205, 40 Foley Square, New York, New York 10007 and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

_____
James C. Francis IV
United States Magistrate Judge

Dated:   New York, New York
         March 27, 2006

Copies mailed this date to:

Jack Hsu
02-A-0170
Woodbourne Correctional Facility
P.O. Box 1000
Woodbourne, New York, 12788

Bridget Rahilly Steller, Esq.
Chief Assistant District Attorney
The Office of the District Attorney
    for Dutchess County
236 Main Street
Poughkeepsie, New York 12601